UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**Pauline M. Bailey on behalf of M.R.,**

**Plaintiff,**

-v-                              3:11-CV-815 (NAM)

**Carolyn W. Colvin, Acting Commissioner of Social Security, in place of Michael Astrue,**

**Defendant.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Olinsky Law Group
Howard D. Olinsky, Esq., of counsel
300 South State Street, Suite 420
Syracuse, New York 13202
Attorney for Plaintiff

Hon. Richard S. Hartunian, United States Attorney
Amanda J. Lockshin, Esq., Special Assistant United States Attorney
Andreea L. Lechleitner, Esq., Special Assistant United States Attorney
Social Security Administration
Office of Regional General Counsel, Region II
26 Federal Plaza - Room 3904
New York, New York 10278

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

On October 2, 2007, plaintiff filed an application for Supplemental Security Income ("SSI") on behalf of M.R., her son, born September 1, 1994. Plaintiff alleges that M.R. was disabled due to Attention Deficit Hyperactive Disorder ("ADHD"), Bipolar Disorder, and high blood pressure. After the initial denial of the claim, plaintiff requested a hearing, which was held on March 16, 2009 before Administrative Law Judge ("ALJ") Dennis O'Leary. Plaintiff and

M.R., who were not represented by counsel, both testified at the hearing. On April 24, 2009, the ALJ issued a decision holding that M.R. had the severe medical impairments of ADHD and asthma, but that the impairments did not meet or medically equal one of the listed impairments, nor did they functionally equal a listed impairment. Thus, the ALJ held that M.R. was not disabled and not eligible for SSI for the period October 2, 2007 through April 24, 2009. On May 19, 2011, the Appeals Council denied the request to review, and the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").

Pursuant to 42 U.S.C. § 405(g), plaintiff seeks judicial review of the subject determination that M.R. was not disabled and therefore not eligible for SSI for the subject period. She asks the Court to reverse the Commissioner's decision denying benefits and to remand the matter for payment of benefits, or, in the alternative, to remand the matter to the ALJ for additional proceedings. As set forth below, the Court finds that the ALJ's determination was not supported by substantial evidence and that the ALJ erred in failing to develop the record. The Court grants plaintiff's motion for judgment on the pleadings (Dkt. No. 15) to the extent of reversing the Commissioner's determination and remanding for determination after further development of the record; denies defendant's motion for judgment on the pleadings (Dkt. No. 20); and remands to the Commissioner for further proceedings in accordance herewith.

**APPLICABLE LAW - GENERALLY**

Under 42 U.S.C. § 1382c(a)(3)(C)(i), an individual under the age of 18 will be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

The regulations establish a three-step evaluative process for determining whether a child meets the statutory definition of disability. *See* 20 C.F.R. § 416.924, "How we determine disability for children." First, a child who is doing substantial gainful activity is not disabled. 20 C.F.R. § 416.924(b). Second, a child who does not have an impairment or combination of impairments that is severe is not disabled. 20 C.F.R. § 416.924(c). Third, where, as here, the child was not doing substantial gainful activity and had one or more severe impairments during the time period in issue, the question is whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 ("listed impairment"). 20 C.F.R. § 416.924(a). If an impairment is found to meet, medically equal, or functionally equal a listed disability, and the twelve-month durational requirement is satisfied, the child will be deemed disabled. 20 C.F.R. § 416.924(a),(d)(1).

Analysis of functionality is informed by consideration of how a child functions in six main areas, or "domains." 20 C.F.R. § 416.926a(b)(1). The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

A finding of functional equivalence to a listed impairment may be based on a finding of a "marked" limitation in any two of the six domains, or an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a). A marked limitation means an impairment that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An extreme limitation is one that

interferes "very seriously" with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

The existence of a medically determinable impairment must be established by an acceptable medical source, in this case a physician or psychologist. *See* 20 C.F.R. § 416.913(a). Evidence from other sources, including nurses, educational personnel, and family members, may be used to show the severity of an impairment and how the child typically functions compared to children of the same age who do not have impairments. *See* 20 C.F.R. § 416.913(d).

The Court "may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). The Commissioner's findings as to any fact, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw*, 221 F.3d at 131 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

## ALJ'S DECISION

The ALJ held that M.R. was an adolescent during the time period in issue, October 2, 2007 to April 24, 2009; that he had not engaged in substantial gainful activity; and that he had the

-4-

severe impairments of ADHD and asthma.[1] The ALJ further found that M.R. did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. Plaintiff does not challenge the foregoing conclusions. Rather, plaintiff challenges the ALJ's final conclusion that M.R. did not have an impairment or combination of impairments that functionally equaled the listed impairments. In reaching this determination, the ALJ summarized the evidence and analyzed the six functional domains.

The ALJ summarized the evidence as follows:

> The claimant is a 14 year old child (13 years old at his application date) who enrolled in regular education. It is alleged that he has been disabled since August 30, 1997 due to attention deficit hyperactivity disorder, bipolar disorder and high blood pressure. DDS found no marked or extreme limitation in any domain, which is consistent with this decision.
>
> The evidence contains a general medical report of Dr. Rao, covering the period of September 29, 2004 through October 23, 2007, who diagnosed the claimant with attention deficit hyperactivity disorder. Dr. Rao stated that the claimant was currently taking Concerta and Clonidine; that his attention, concentration, memory and ability to perform calculations were "ok"; and that he was able to take care of himself.
>
> Dr. Magurno, who conducted a pediatric consultative examination on November 27, 2007, reported that the claimant's mother reported that her son had a 1½ year history of blackouts; asthma, which was treated with Albuterol; attention deficit hyperactivity disorder, which was treated with Concerta; and high blood pressure, which was treated with Clonidine. Ms. Bailey reported that her son did not require any emergency room visits that past year.
>
> Dr. Magurno noted that the claimant related to him in an age-appropriate way and that he appeared to have a normal attention span. A physical examination was unremarkable. Dr. Magurno diagnosed attention deficit hyperactivity disorder, asthma, hypertension and blackout spells of unknown etiology. The examiner remarked that the claimant could participate in recreational and educational activities appropriate for age with accommodations being made

---

[1] The ALJ determined that the evidence failed to establish that M.R. had a severe impairment due to bipolar disorder or a severe hearing impairment. Plaintiff does not challenge this determination.

for the use of his inhaler as needed. He should avoid heights and dangerous equipment due to his blackout spells. He should also avoid dust, fumes and other known lung irritants due to his asthma.

In a February 28, 2008 ADHD progress note, T. Williams, LPN stated that the claimant was in the 7th grade and failing all classes. His attention was distracted and hypervigilent; he never stayed on task; his mood was elevated and irritable; and he had difficulty falling asleep. A physical examination was normal. At that time, his Concerta was increased to 72 mg and he was advised to follow up in 2 months.

The record also contains a March 13, 2008 "504 Accommodation/Meeting Plan" from Binghamton City Schools. It was noted that the claimant was enrolled in the 7th grade and that he currently had low grades in school. It was also noted that the claimant was prone to daydreaming in class; that he fidgeted constantly; that he tended to pick at himself; and that he was very disorganized. He was withdrawn in class, but was able to work successfully in groups. It was further noted that the claimant's lack of attention in the classroom and problems with organization had impacted his classroom negatively. It was determined that the claimant be placed in a regular class that he would receive a 504 accommodation Plan for the remainder of the 2007-2008 and the 2008-2009 school year along with individual counseling 2 times a month for 40 minutes. It was also noted that the claimant be seated close to where instruction was happening.

Post hearing, we received a May 19, 2008 psychological evaluation of Dr. Greensberg-Strano which was consistent with attention-deficit hyperactivity disorder, combined type. A WIAT-II indicated that the claimant was functioning in the average range across all domains, except mathematics.

Summary of Witness Testimony:

Pauline Bailey, the claimant's mother, testified that her son has ADHD, bipolar, auditory problems and educational problems which impacted on his homework and home life. When asked who made the ADHD diagnosis, Ms. Bailey related that it was made by his primary care physician at the SUNY Binghamton Care Unit. His grades are failing, he loses concentration and his focus is gone. His last report card indicated that he was failing 4 out of 5 classes. He will start something and not finish it and move on to something else within 5 minutes. Her son will purposely drop a pencil on the floor when he can't concentrate anymore. Ms. Bailey testified that her son is in the 8th grade and Binghamton East Middle School. He was left back twice in the kindergarten and once in the 2nd grade. He is in regular classes, but in a 504 program with extra time for tests and help with his homework. He is also

-6-

taken out of class if he is disruptive.

When asked if she has had conversations with his teachers about his progress, Ms. Bailey stated that his teachers state that he is not on task, does not participate and does not ask for help. When asked about his behavior outside of school, Ms. Bailey stated that her son lashes out at his step-dad and only has two friends. He does not bring work home, so they cannot help him. He does not want to play with his younger brother and he does not interact with the other people in the household because they are older. Ms. Bailey stated that her son will show his "bipolar" by throwing things. When asked to describe his bipolar symptoms, the claimant's mother related that the claimant has temper tantrums and that he lashes out and yells. His primary care physician is Dr. Rao, who he sees every three months for his ADHD medication and progress. If he does not take his medication he bounces off the wall. When he takes his medication he is more stable, but only for the 8 hours that he is in school. When asked about his activities of daily living, his mother reported that he is on the computer, plays with his Nintendo, watches television and goes to a friend's house.

The claimant, [M.R.] testified that he likes school "pretty good". He is in the computer club and will be running track when the weather is nicer. When asked what he does to stay busy, [M.R.] stated that he plays games on a hand held computer. He gets along well with his teachers. Some of them are pretty good and some of them he doesn't like because he can't understand them much. He does not really understand math that much. He does not do his homework.

After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not credible to the extent they are inconsistent with finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings for the reasons explained below.

The ALJ evaluated the six domains set forth in 20 C.F.R. § 416.926a(b)(1), and found as follows:

(1) Claimant has a less than marked limitation in acquiring and using information;
(2) Claimant has a marked limitation in attending and completing tasks;
(3) Claimant has a less than marked limitation in interacting and relating with others;

-7-

> (4) Claimant has no limitation in moving about and manipulating objects;
> (5) Claimant has no limitation in caring for herself/himself; and
> (6) Claimant has a less than marked limitation in health and physical well-being.

Based on his determination that M.R. had a less than marked limitation or no limitation in all domains except attending and completing tasks, in which he had a marked limitation, the ALJ concluded that M.R. did not have a functional equivalence to a listed disability and was not disabled for purposes of the Social Security Act for the period October 2, 2007 to April 24, 2009.

## DISCUSSION

### The Record

Plaintiff argues that the ALJ should have obtained an opinion from T. Williams, L.P.N. at Lourdes Pediatrics; that the ALJ should have weighed the opinion of Ms. Tucker, M.R.'s seventh grade teacher; that he should have obtained updated reports from M.R.'s eighth grade teacher(s); and that the ALJ's determination that M.R. had a less than marked limitation in all domains except attending and completing tasks, in which he had a marked limitation, is not supported by substantial evidence. Specifically, plaintiff argues that M.R. had "marked and/or extreme limitations in the domains Attending and Completing Tasks, Acquiring and Using Information, and Interacting and Relating with Others."

The Court agrees with plaintiff that the ALJ's decision is not supported by substantial evidence and that the record is inadequately developed. The time period covered by the ALJ's decision is October 2, 2007 through April 24, 2009. Except for the notes from T. Williams, L.P.N. (discussed below), the medical report and records from the office of Mukesh Rao, M.D., M.R.'s pediatrician, state that M.R. was last examined on October 23, 2007, that is, three weeks after the beginning of the one-and-a-half-year period. The New York State Office of Temporary

-8-

and Disability Assistance form apparently filled out by Dr. Rao's office is conclusory, incomplete, and unsigned. It reflects a diagnosis of ADHD and shows that M.R. was taking Concerta for ADHD and Clonidine for high blood pressure. In the section regarding whether the child's function/behavior is age appropriate in the areas of motor skills, sensory abilities, communication skills, cognitive skills, and social/emotional skills, someone has written: "Not evaluated here." The section on the form for mental status is mostly blank, with "OK" written three times although there are six categories on the page; it is impossible to discern to which categories the "OKs" refer. In the section regarding current functional assessment of age appropriate abilities, someone wrote: "able to care for himself – appropriate for age." This conclusory, incomplete, unsigned, and stale report from Dr. Rao's office appears to be the only report from an acceptable treating medical source. *See* 20 C.F.R. § 416.913(a).

The record also contains a detailed evaluation report dated May 19, 2008 by psychologist Debra Greenberg-Strano, Ph.D. at the Psychological Clinic of State University of New York at Binghamton. The evaluation report indicates that, as of the time it was prepared, the Psychological Clinic was evaluating, not treating, M.R. The evaluation report states that M.R. was assessed at the Psychological Clinic over the course of nine sessions from January 21, 2008 to May 2, 2008. The assessment instruments utilized included the Wechsler Intelligence Scale for Children, Wechsler Individual Achievement Test, Gordon Diagnostic System, and semi-structured clinical interviews. While many of M.R.'s composite scores were in the "average" range, he scored "extremely low" on the "Processing Speed Index." The evaluation report noted that "despite his average scores ... [M.R.] is struggling to pass in most of his classes"; commented that "[o]ne factor contributing to his performance [during the evaluation] ... is that it was

administered in an optimum testing environment (quiet room, frequent breaks, one-on-one)"; and observed: "To the extent that it is possible to create a more optimal learning environment in the classroom for [M.R.], he should be able to improve his grades." The social-emotional assessment supported the diagnosis of ADHD and noted that M.R. exhibited symptoms consistent with social phobia. The assessment included recommendations of educational accommodations similar to the accommodation plans adopted by the school district on March 13, 2008 and February 2, 2009 (discussed below). It appears from the school district records (discussed below) that by February 2, 2009 M.R. was receiving counseling at the Psychological Clinic. M.R.'s mother testified at the March 16, 2009 hearing, however, that M.R. completed a one-year term of counseling there and that although the counselor wanted him to continue, she could no longer afford it.

The only other submissions from acceptable medical sources are a report of a physical examination by consultant Justine Magurno, M.D. dated November 27, 2007 and a conclusory disability evaluation form completed by consultant R. Mohanty (apparently a pediatrician) dated January 15, 2008. There is no evidence from an acceptable medical source pertaining to M.R.'s condition in eighth grade (the 2008-2009 school year).

The evidence from other sources, *see* 20 C.F.R. § 416.913(d), concerning the one-and-a-half-year period in issue includes three progress notes by T. Williams, L.P.N., who worked at the same facility as M.R.'s treating physician, Dr. Rao. Nurse Williams' first progress note, dated February 28, 2008, noted the diagnosis of ADHD and medications including Concerta and Clonodine, and stated that M.R. was failing all classes. Nurse Williams checked boxes indicating the following: "Attention: Distracted, Hypervigilant"; "Task: Never stays on task"; "Mood: Elevated, Irritable"; and "Social: Appropriate friends and activity." She wrote that his activities

-10-

were "video games, play cards." The second progress note, dated May 7, 2008, noted that his medications included Concerta and Clonodine; that he was failing history and math; that his attention was distracted, hypervigilant, and impulsive; and that his mood was elevated, angry at home, anxious, depressed at school, and irritable. The third progress note, dated December 9, 2008, noted that M.R. had ADHD; that his medications included Concerta and Clonodine; that his grades were "improving – 70's-80's"; that his attention was distracted; and that he sometimes stayed on task. The disability form report from Dr. Rao's office states that M.R. was treated every three or four months for ADHD, and M.R.'s mother testified he was treated for the condition every three months; thus, M.R. may have been seen again during the subject time period by Nurse Williams or someone else at Dr. Rao's office after the December 9, 2008 visit.

The record also includes a Teacher Questionnaire dated March 13, 2008 completed by Sherri Tucker, M.R.'s seventh grade English teacher. The questionnaire rated M.R. in the six functional domains. With respect to each domain, the questionnaire lists a number of activities and asks the teacher to rate the child as having no problem, a slight problem, an obvious problem, a serious problem, or a very serious problem with each activity. With respect to the domain of "acquiring and using information," Ms. Tucker rated M.R. as having obvious problems comprehending oral instructions, understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, and expressing ideas in written form; slight problems understanding school and content vocabulary, comprehending and doing math problems, and recalling and applying previously learned material; and no problems reading and comprehending written material and learning new material. In the domain of "attending and completing tasks," Ms. Tucker rated M.R. as having a very serious problem working without

-11-

distracting himself (hourly); serious problems focusing long enough to finish assigned activity or task (daily), organizing his own things or school materials (hourly), and completing class/homework assignments (daily); an obvious problem working at a reasonable pace/finishing on time (hourly); slight problems refocusing to task when necessary (daily), carrying out multi-step instructions (weekly), and completing work accurately without careless mistakes (daily); and no problems paying attention when spoken to directly, carrying out single-step instructions, waiting to take turns, and changing from one activity to another without being disruptive. She reported no problems in the domain of interacting and relating with others and no problems moving about and manipulating objects. In the domain of caring for himself, she noted obvious problems taking care of personal hygiene (daily), and using good judgment regarding personal safety and dangerous circumstances (weekly); slight problems handling frustration appropriately (daily), being patient when necessary (weekly), and knowing when to ask for help (monthly). She reported no knowledge regarding his health and physical well-being except to note that he did not frequently miss school due to illness. There is no information from M.R.'s eighth grade teacher(s) although the ALJ's decision was issued April 24, 2009, near the end of the 2008-2009 school year. *See* 20 C.F.R. § 416.924a(a)(2)(iii) ("we will ask for information from your teachers ... about how you are functioning there on a day-to-day basis compared to other children your age who do not have impairments").

    The record further includes the Binghamton city school district's "504 Accommodation Plan/Meeting Outcome" document dated March 13, 2008 regarding M.R. It noted M.R.'s diagnosis of ADHD and determined that he qualified as a handicapped individual under Section 504 of the Rehabilitation Act. 29 U.S.C.A. § 794(a). The district observed that M.R. currently

has low grades, is prone to daydreaming in class, fidgets constantly, is very disorganized, and is withdrawn in class but able to work successfully in groups; stated that M.R.'s lack of attention in the classroom and problems with organization have impacted his classroom performance negatively; and determined that he would remain in regular classes and receive the following accommodations: "[M.R.] will receive a 504 Accommodation Plan for the remainder of the 2007-2008 school year along with individual counseling, 2X's/40 mins/monthly and a 504 Accommodation Plan for the 2008-2009 school year along with individual counseling 2X's/40 mins/monthly." State tests and final examinations would be administered to M.R. in small groups; in classes he would be seated "close to where instruction is happening"; he would receive copies of a daily homework sheet; and the teacher would check on him periodically "to make sure he's on track."

In addition, the record includes a second "504 Accommodation Plan/Meeting Outcome" from the school district dated February 2, 2009. It set forth additional accommodations including extending the time allotted to complete tests; breaks when M.R. needed to refocus and get back on track ("Given time to get a drink or something to eat he may come back to class ready to learn"); presentation of lessons on the "Smart Board" or in an interactive format; projects involving no more than two to three steps; and verbal reminders about completing his homework. The record notes: "Counseling services have been implemented by his mother outside of school at SUNY Binghamton"; presumably this is at the Psychological Clinic where M.R. was evaluated by Dr. Greenberg-Strano on May 19, 2008.

**Analysis**

The Court concludes that there is not substantial evidence in the record to support the

-13-

ALJ's determination that M.R. was not disabled. Further, the ALJ failed to develop an adequate record for a decision. As noted, the only record evidence from an acceptable medical treating source was the conclusory, incomplete, unsigned disability form report from the office of Dr. Rao, M.R.'s treating physician, dated two weeks after the commencement of the October 2, 2007 to April 24, 2009 period in issue. Particularly because Dr. Rao may have been M.R.'s only acceptable treating source, the ALJ had a duty to obtain useful updated information, and to ascertain that it was in fact the opinion of Dr. Rao. Nurse Williams' progress notes indicate that Dr. Rao's office continued to treat M.R. at least until December 9, 2008, and that – at least during the three visits reflected in her notes – the office reviewed M.R.'s diagnosis of ADHD, school performance, attention span, ability to stay on task, mood, and social situation.

The reports of the consultants, Justine Magurno, M.D. and R. Mohanty (apparently a pediatrician) are insufficient to constitute evidence supporting the ALJ's determination and fail to fill the gap in the medical record. Dr. Magurno only evaluated M.R.'s physical condition and did not address his functionality. The report of Dr. Mohanty, who did not examine M.R., was highly conclusory. Moreover, the reports, dated November 27, 2007 and January 15, 2008, were completed within a few months after the commencement of the time period in issue.

The only other acceptable medical source, Dr. Greenberg-Strano from the Psychological Clinic, does not appear to have been a treating source at the time she issued the May 19, 2008 report in the record. Her detailed report concerned evaluation of M.R., not treatment. After administering numerous assessment tools over a course of nine sessions, Dr. Greenberg-Strano found that M.R. scored "extremely low" on the Processing Speed Index; recommended numerous educational accommodations; and opined that he exhibited symptoms of social phobia. The

report raises significant questions regarding whether M.R. suffered an extreme impairment in the domain of attending and completing tasks, a marked or extreme impairment in acquiring and using information, and/or a marked impairment in interacting and relating with others. With respect to this report, the ALJ simply wrote: "A WIAT-II indicated that the claimant was functioning in the average range across all domains, except mathematics." The WIAT-II test (Wechsler Individual Achievement Test – 2nd Edition) was merely one of many diagnostic tools cited in the report; read in the context of the entire report, it does not constitute substantial evidence for the ALJ's conclusion that M.R. was not disabled.

The Court notes also that, although Dr. Greenberg-Strano's evaluation report is the most recent submission from an acceptable medical source, the report was dated almost a year prior to the end of the subject period. Thus, there is no evidence from any acceptable medical source pertaining to any time after the first seven months of the subject one and a half year period. In addition, it appears that Dr. Greenberg-Strano or an associate could later have contributed to the record as treating sources, because it appears that prior to the end of the subject period, M.R. was receiving counseling at the Psychological Clinic. The ALJ erred in failing to ascertain whether Dr. Greenberg-Strano or an associate had become a treating medical source, and, if so, to develop the record in this regard.

The importance of the above-cited problems with medical-source information is enhanced by a review of the evidence from other sources regarding much of the time period in issue. Significantly, the other-source evidence (some of Nurse Williams' notes, M.R.'s seventh grade teacher's questionnaire, the disability form filled out by M.R.'s mother, and the hearing testimony of M.R. and his mother) is overall fairly consistent regarding M.R.'s functionality, particularly his

-15-

problems with acquiring and using information and attending and completing tasks. These sources suggest, as does Dr. Greenberg-Strano's evaluation, that during at least part of this time period M.R. may have suffered an extreme impairment in the domain of attending and completing tasks, a marked or extreme impairment in acquiring and using information, and/or a marked impairment in interacting and relating with others. The Court notes also that the school district's accommodations beginning in March 13, 2008 and February 2, 2009 are similar in many respects to Dr Greenberg-Strano's May 19, 2008 recommendations; thus, it may be that M.R.'s situation was improving during the 2008-2009 school year. In fact, Nurse Williams' December 9, 2008 notes state that M.R.'s grades were "improving – 70's-80's." M.R.'s mother testified at the March 16, 2009 hearing, however, that M.R. was failing four out of five classes. Clearly, the lack of input from M.R.'s eighth grade teacher(s) is a serious omission.

The Court concludes that there is insufficient evidence in the record to support the ALJ's determination that M.R. was not disabled between October 2, 2007 and April 24, 2009. Moreover, a determination of whether M.R. was disabled during this time cannot be made on the present record. The ALJ has the duty "to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004) (citation omitted). Where, as here, the claimant proceeded *pro se*, this duty is "heightened." *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009). Thus, the ALJ should have contacted Dr. Rao and Dr. Greenberg-Strano, as well as M.R.'s eight grade teacher(s) and perhaps Nurse Williams, to gather additional and updated information.

## CONCLUSION

It is therefore

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is granted to the extent of reversing the Commissioner's determination and remanding for determination after further development of the record; and it is further

ORDERED that defendant's motion for judgment on the pleadings (Dkt. No. 20) is denied; and it is further

ORDERED that the matter is remanded to the Commissioner for further proceedings in accordance with this Memorandum-Decision and Order.

IT IS SO ORDERED.

Date: June 6, 2014
      Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge